IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL J. RAMIREZ, | ) | 8:08CV390 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT HOUSTON, Director of | ) | |
| Dept of Correctional Services, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Michael J. Ramirez' ("Ramirez") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondent filed an Answer and Brief on the merits of the Petition (filing nos. 7 and 8) and relevant State Court Records (filing no. 9). Ramirez filed a Response to the Answer. (Filing No. 17.) This matter is therefore deemed fully submitted.

Liberally construing the allegations of the Petition, Ramirez states that he is entitled to a writ of habeas corpus because:

1. Petitioner's conviction was obtained by a violation of the protection against double jeopardy because Petitioner's prior felony conviction was used as an element of a charged offense and also as a prior conviction for enhancement purposes, constituting a "Double Jeopardy and Due Process" violation, and Petitioner's trial counsel was ineffective for failing to object at sentencing ("Claim One").

2. Petitioner's conviction was obtained as a result of ineffective assistance of counsel because Petitioner's trial counsel did not file a motion to suppress evidence obtained "illegally through the use of a search warrant issued upon an insufficient affidavit," did not object to

>    inadmissible evidence, did not object to "prior bad acts testimony," and did not impeach witnesses ("Claim Two").
>
> 3. Petitioner's conviction was obtained as a result of ineffective assistance of counsel because Petitioner's appellate counsel did not raise the issues listed in Claim Two of this Memorandum and Order on direct appeal ("Claim Three").

(Filing No. 6 at CM/ECF pp. 1-2.)

## I. BACKGROUND

### A. Ramirez' Conviction and Direct Appeal

On October 18, 2004, a jury found Ramirez guilty of one count of use of a deadly weapon to commit a felony, one count of possession of a deadly weapon by a felon, and one count of terroristic threats. (Filing No. 9-2, Attach. 1, at CM/ECF pp. 63, 67.) Ramirez was thereafter sentenced to serve a prison term of 15 to 30 years on the use of a deadly weapon count, 10 to 20 years on the possession of a deadly weapon count, and 10 to 20 years on the terroristic threats count. (*Id.* at CM/ECF pp. 64-65.) Ramirez was also found to be a habitual criminal, and was sentenced as such. (*Id.*) Ramirez filed a timely direct appeal arguing only that the sentence imposed was excessive. (*Id.* at CM/ECF pp. 74-86.) The Nebraska Court of Appeals summarily affirmed Ramirez' conviction and sentence on May 5, 2005. (Filing No. 9-6, Attach. 5, at CM/ECF p. 2.) Ramirez did not file a petition for further review with the Nebraska Supreme Court, and the mandate issued on June 9, 2005. (*Id.*)

### B. Ramirez' Post Conviction Motion and Appeal

On November 23, 2005, Ramirez filed a verified motion to vacate and set aside

conviction and sentence in the Scotts Bluff County, Nebraska District Court. (Filing No. 9-4, Attach. 3, at CM/ECF pp. 19-21.) The court appointed counsel, and on January 5, 2006, Ramirez filed an amended motion for post-conviction relief (the "Amended Post-Conviction Motion). (*Id.* at CM/ECF pp. 22-42.) Liberally construed, the Amended Post Conviction Motion set forth all of Claims One through Three. (*Id.*) The Scotts Bluff County District Court conducted an evidentiary hearing on Ramirez' Amended Post Conviction Motion and denied relief on all Claims. (*Id.* at CM/ECF pp. 44-53.) Ramirez filed a timely appeal of the denial of post conviction relief. On appeal, Ramirez assigned several errors, encompassing Claims One through Three. (*Id.* at CM/ECF pp. 62-99.) On January 25, 2008, the Nebraska Supreme Court affirmed the Scotts Bluff County District Court's decision in a detailed, published opinion. *State v. Ramirez*, 745 N.W.2d 214 (Neb. 2008).[1] The details of the Nebraska Supreme Court's opinion are set forth in greater detail in the analysis below. Petitioner filed this action on August 27, 2008. (Filing No. 1.)

## II. ANALYSIS

### A. Standard of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume

---

[1] Respondent also filed a copy of this published opinion with the State Court Records in this matter. (Filing No. 9-5, Attach. 4, at CM/ECF pp. 32-47.) Rather than citing to the record, the court will cite to the reported case.

that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

### B. The *Strickland* Standard

For each of his Claims, Ramirez argues that his trial and appellate counsel was ineffective. A claim of ineffective assistance of counsel is reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th

4

Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the *Strickland* test requires the petitioner to demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988)). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 689.

Additionally, the Supreme Court has very recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-20 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome. Thus:

5

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro*, supra, at 473, 127 S. Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Id.* at 1420.

### C. Ramirez' Claims

#### 1. State Court Findings-Claim One

For his Claim One, Ramirez argues that his conviction was obtained in violation of the protection against double jeopardy and that his counsel was ineffective for failing to raise this argument. (Filing No. 1 at CM/ECF p. 5.) In considering Ramirez' Claim One, the Nebraska Supreme Court applied state and federal law and affirmed the denial of relief on that claim. *Ramirez*, 745 N.W.2d at 217-24. In particular, the Nebraska Supreme Court stated:

> Ramirez' argument here seems to be that he is being subjected to multiple punishments for the same offense, although his argument also implicates statutory interpretation. However, in this context, the two inquiries are related. As the U.S. Supreme Court has explained with respect to the prohibition on multiple punishments, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. The question of what punishments are constitutionally permissible is no different from the question of what punishment the legislative branch intended to be

6

> imposed. Where the Legislature intends to impose multiple punishments, imposition of such sentences does not violate the Constitution. With those principles in mind, we turn to the statutes at issue in this case.

*Id.* at 219 (quotations omitted).

The court then undertook a lengthy review of state and federal precedent and analyzed the legislative intent of the two statutes at issue, § 28-1206 (the felon in possession of a firearm statute) and § 29-2221 (the habitual criminal statute). After doing so, the Nebraska Supreme Court determined that:

> Most importantly, this case simply does not involve double penalty enhancement. There is a significant distinction between double enhancement, which involves the "stacking" of multiple enhancement provisions that this court rejected in *Chapman*, and the use of a conviction to establish status and then enhance a sentence. And under Nebraska law, possession of a firearm by a felon is simply a Class III felony, with no indication that it should be treated differently from any other Class III felony for purposes of sentence enhancement. The habitual criminal statute is, admittedly, a sentence enhancement-a stiffened penalty for the latest crime which is considered to be an aggravated offense because it is a repetitive one. Section 28-1206, however, is not a subsequent offense enhancement, but a separate offense, enacted to lessen a high potential of danger to the public and to reduce the probability that the convicted individual would continue his criminal activity. Prohibiting a convicted felon from possessing a firearm neither punishes the felon for the underlying felony, nor enhances the sentence for another conviction-it is a new and separate crime of which the prior conviction is merely an element. . . . In short, where neither § 28-1206 nor § 29-2221 violates double jeopardy individually, there is no reason why they would offend the Double Jeopardy Clause when used in conjunction. . . . And because [Ramirez'] sentence was lawful, he was not prejudiced by his trial counsel's failure to object on that basis.

7

*Id.* at 222-23 (quotation omitted).

    *2.    State Court Findings-Claim Two*

For his Claim Two, Ramirez argues that his trial counsel was ineffective for failing to file a motion to suppress and because he failed to object to inadmissible evidence, did not object to "prior bad acts testimony," and did not impeach witnesses . (Filing No. 1 at CM/ECF p. 6.) As with Claim One, the Nebraska Supreme Court conducted a detailed analysis of this Claim and rejected it in its entirety. *Ramirez*, 745 N.W.2d at 225-229. Regarding Ramirez' arguments regarding the motion to suppress, the Nebraska Supreme Court found:

> Ramirez contends that the affidavit in his case did not set forth a sufficient factual basis for the issuance of an "any time" warrant. We disagree. The affidavit established that Ramirez used methamphetamine, had a shotgun and ammunition, kept the shotgun with him, and had threatened Bates with the shot-gun. Thus, the affidavit provided information showing that the execution of the warrant at night, when speed and surprise could be accomplished, would serve to protect the safety of the officers involved. Because the search warrant properly authorized an "any time" search, Ramirez failed to prove counsel was ineffective, or that he was prejudiced, because counsel failed to challenge the warrant.

*Ramirez*, 745 N.W.2d at 225. The Nebraska Supreme Court also rejected Ramirez' argument that officers failed to "knock and announce," stating:

> In this case, the court did not issue a "no knock" warrant pursuant to § 29-411. But the record indicates that Ramirez opened the door, and surrendered to police, before they had an opportunity to knock and announce their presence. Although Ramirez averred that he stepped out the back door, rather than the front door, he does not contest the

8

> essential fact that he came out of the house before the police went in. In other words, Ramirez was aware of the presence of the police, and aware of their identity and purpose, before they entered the dwelling. Further identification would have been a useless gesture. We agree with the district court that under these circumstances, the knock and announce rule was not violated. . . Because Ramirez' trial counsel did not perform deficiently in failing to object to the search of the residence, and Ramirez was not prejudiced, this assignment of error is without merit.

*Id.* at 226 (quotations and citations omitted). Regarding the remainder of Claim Two, that Ramirez' trial counsel was ineffective because of certain decisions regarding the evidence, the Nebraska Supreme Court also rejected these arguments. *Id.* at 228-29. In particular, the Nebraska Supreme Court determined:

> Ramirez first complains that trial counsel did not object to Bates' testimony about Ramirez' possession of the shotgun outside the charged timeframe and several other incidental remarks Bates made. . . . But even if some of Bates' testimony was irrelevant, it was not prejudicial. There was no reason for the jury to find Bates' testimony credible on those subjects, but incredible with respect to her testimony about the incident for which Ramirez was convicted. If the jury believed Bates-which it obviously did-then her testimony about that incident alone would leave little alternative but to find Ramirez guilty. In short, Ramirez has not demonstrated a reasonable probability that had counsel objected to Bates' allegedly irrelevant testimony, the result of the proceeding would have been different. Ramirez argues that trial counsel should have done more to impeach Bates. . . . [I]t is evident that counsel made a reasonable strategic decision in not adducing the testimony. Ramirez also argues that Bates should have been cross-examined about alleged inconsistencies between her trial testimony and the police affidavits used to support the search and arrest warrants. Having reviewed the record, we are not convinced that they are as inconsistent as Ramirez asserts, and we conclude that Ramirez was not prejudiced by counsel's failure to use the affidavits on cross-examination. Ramirez' brief also takes issue with several other alleged failures of trial counsel. We have reviewed the record and find each instance identified by

9

> Ramirez to be incidental. In each instance, Ramirez failed to demonstrate a reasonable probability that absent counsel's alleged deficiency, the result of the proceeding would have been different. In short, Ramirez has failed to demonstrate that any of the alleged deficiencies in trial counsel's performance deprived Ramirez of effective assistance of counsel.

*Id.*

### 3. Deference

Respondent argues that all of the foregoing findings of fact and conclusions of law by the Nebraska Supreme Court are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. (Filing No. 8.) Indeed, as set forth above, the court must grant substantial deference to the Nebraska state court decisions. The court has carefully reviewed the record in this matter and finds that the Nebraska Supreme Court decision denying Ramirez' ineffective assistance of counsel claims are not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Ramirez has not submitted any evidence, let alone clear and convincing evidence, that the Scotts Bluff County District Court or the Nebraska Supreme Court was incorrect in any of its factual or legal determinations. 28 U.S.C. § 2254(e)(1).

Additionally, for his Claim Three, Ramirez argues that his counsel was ineffective for failing to raise Claim Two on direct appeal. However, because Claim Two is not meritorious, his counsel cannot be ineffective for failing to raise non-meritorious claims and Ramirez could not have been prejudiced by that failure. *Kitt v. Clarke*, 931 F.2d 1246, 1250 (8th Cir. 1991) (citing *Meyer v. Sargent*, 854 F.2d 1110, 1115-16 (8th Cir. 1988)). In short, all of Ramirez' claims were adjudicated on the merits by the Nebraska Supreme Court and the grant of a writ of habeas corpus

is not warranted here because the Nebraska state courts reasonably applied *Strickland* and other Supreme Court holdings in reaching their decision. In light of these findings, Ramirez' Petition is dismissed in its entirety.

October 8, 2009.                                   BY THE COURT:

                                                                         s/ Joseph F. Bataillon
                                                                         Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.